# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| OPTIMUM IMAGING TECHNOLOGIES LLC, § § § § Plaintiff, § § v. § § SONY CORPORATION, § § Defendant. § | Civil Action No.  4:23-cv-928 Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Sony Corporation's Motion to Transfer to the Northern District of California Pursuant to 28 U.S.C. 1404(a) (Dkt. #26). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **DENIED**.

## BACKGROUND

On October 18, 2023, Plaintiff filed a Complaint in six patent infringement cases[1] alleging that Defendant infringed U.S. Patent Nos. 7,612,805 ("the '805 Patent"); 8,451,339 ("the '339 Patent"); and 10,873,685 ("the '685 Patent"); and 10,877,266 ("the '266 Patent") (collectively, the "Asserted Patents") (Dkt. #1 at p. 1). The Asserted Patents generally relate to "digital imaging systems and methods, namely in-camera systems for filtering and correcting image aberrations or distortions" (Dkt. #1 at ¶ 12). Plaintiff's Complaint alleges that Defendant infringed on the Asserted Patents at least by importing, selling, and offering for sale products such as the Sony α9

---

[1] These cases are *Optimum Imaging Techs. LLC v. FUJIFILM Corp.*, No. 4:23-cv-922 (E.D. Tex. Oct. 18, 2023); *Optimum Imaging Techs. LLC v. Nikon Corp.*, No. 4:23-cv-923 (E.D. Tex. Oct. 18, 2023); *Optimum Imaging Techs. LLC v. Olympus Corp., et al.*, No. 4:23-cv-924 (E.D. Tex. Oct. 18, 2023); *Optimum Imaging Techs. LLC v. Panasonic Corp., et al.*, No. 4:23-cv-926 (E.D. Tex. Oct. 18, 2023); *Optimum Imaging Techs. LLC v. Samsung Electronics Co., Ltd.*, No. 4:23-cv-927 (E.D. Tex. Oct. 18, 2023); and *Optimum Imaging Techs. LLC v. Sony Corp.*, No. 4:23-cv-928 (E.D. Tex. Oct. 18, 2023).

Interchangeable Lens Digital Camera, which performs "Lens Compensation" by "'automatically compensat[ing] for distortion of the screen,' 'automatically compensat[ing] for darkness in the corners of the screen,' and 'automatically reduc[ing] color deviation at the corners of the screen'" (Dkt. #1 at ¶ 16).

On August 29, 2024, Defendant filed its Motion to Transfer Pursuant to § 1404(a) (Dkt. #26), claiming that the Northern District of California ("NDCA") is a more convenient venue to litigate this case than this district because Defendant, a Japanese corporation, has no ties at all to this district and has substantial sources of proof in California, and the Asserted Patents' sole named inventor resides in NDCA (Dkt. #26 at p. 5). On September 19, 2024, Plaintiff filed its Response (Dkt. #33), arguing that Defendant did not meet its burden to show that NDCA is a clearly more convenient forum than this district (Dkt. #39 at p. 5). On September 26, 2024, Defendant filed its Reply (Dkt. #42). On October 3, 2024, Plaintiff filed its Sur-Reply (Dkt. #49). The Motion is ripe for adjudication.

## LEGAL STANDARD

Section 1404 permits a district court to transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to 'an individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The purpose of § 1404 "is to prevent the waste 'of time, energy and money' and 'to protect the litigants, witnesses and the

public against unnecessary inconvenience and expense . . . .'" *Van Dusen*, 376 U.S. at 616 (quoting *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 27 (1960)).

In a patent case, a motion to transfer under 28 U.S.C. § 1404(a) is governed by the law of the regional circuit, in this case the Fifth Circuit. *In re TS Tech U.S. Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," or whether all parties consent to a particular jurisdiction. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once that threshold inquiry is met, the Fifth Circuit has held that the determination of convenience turns on eight factors, where "[n]o factor is of dispositive weight." *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023).

The four private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*").

The four public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* These factors are neither exhaustive nor exclusive. *Id.*

The party seeking transfer of venue must show good cause for the transfer. *Id.* The moving party must show that the transferee venue is "clearly more convenient" than the transferor venue.

*Id.*; *TikTok*, 85 F.4th at 358. The plaintiff's choice of venue is generally not a factor in this analysis, but rather contributes to the defendant's burden to show good cause for the transfer. *Volkswagen II*, 545 F.3d at 315 n.10 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315. And while the multi-factor analysis is informative, ultimately, "the district court has broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987)). "[A] district court abuses its discretion by denying transfer when 'not a single relevant factor favors the [plaintiff's] chosen venue.'" *TikTok*, 85 F.4th at 358 (quoting *Volkswagen II*, 545 F.3d at 318). A district court also "abuses its discretion by denying a motion to transfer when 'virtually all of the events and witnesses regarding the case . . . are in the transferee forum.'" *Id.* at 366 (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013)).

## ANALYSIS

The threshold inquiry on a § 1404(a) motion to transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I*, 371 F.3d 201 at 203. "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Here, the Court finds that venue would have been proper in NDCA because Defendant, a Japanese

4

corporation, is subject to venue in any judicial district in the United States. *In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018).

The Court's decision to deny Defendant's motion turns on a multi-factor transfer analysis. After reviewing each factor, the Court has determined that two factors disfavor transfer, two favor transfer, and the remaining factors are neutral. The Court is apprised of this circuit's approach to avoid a mere tallying of the factors in resolving this dispute. *See In re Radmax, Ltd.*, 720 F.3d 285, 290 n.8 (5th Cir. 2013) ("We do not suggest—nor has this court held—that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score,' is the proper methodology."); *see also SQIP, LLC v. Cambria Co., LLC*, No. 4:23-CV-202-SDJ, 2024 WL 1346498, at *2 (E.D. Tex. Mar. 29, 2024) ("[C]ourts are not to merely tally the factors on each side."). To that end, the Court considered not only each factor's outcome but also its weight to determine whether the actual convenience of NDCA as a forum is "clearly more convenient" than that of this district. *In re Chamber of Commerce of United States*, 105 F.4th 297, 310 (5th Cir. 2024) (quoting *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024)) (establishing that a venue is "clearly more convenient" when "the marginal gain in convenience will be significant" and "evidence makes it plainly obvious . . . that those marginal gains will actually materialize in the transferee venue."). The Court's determination is that transferring this case to NDCA would yield minor gains at best, not the *significant* gains needed to warrant transfer. *See id.* Thus, the Court finds that the motion should be **DENIED** for the reasons below.

I. **The Private Interest Factors**

    A. **The "relative ease of access to sources of proof" factor is neutral.**

This factor considers "the relative access to sources of evidence in the two competing forums." *Juniper Networks*, 14 F.4th at 1321 (Fed. Cir. 2021). In considering the relative ease of

5

access to sources of evidence, a court looks to determine where evidence, such as documents and physical evidence, is stored. *Volkswagen II*, 545 F.3d at 316.

Defendant argues that this factor favors transfer because Plaintiff's evidence is in NDCA, Plaintiff has no evidence in this district, and technical materials relating to the Accused Product's development and operation are in Japan, which is closer to NDCA than this district (Dkt. #26 at p. 12). Those technical materials, consisting of more than 100 manuals and bulletins, are also available only to engineering and service teams with the appropriate clearance, including some employees in San Diego, California.[2] While some "work from home" employees of a non-party subsidiary, Sony Electronics Inc. ("SEL"), work in this district, they cannot access those technical materials, as they support only "sales, marketing, customer support and other business functions for Sony-branded consumer electronic products, including Alpha cameras" (Dkt. #26 at p. 7).

Plaintiff, by contrast, contends that this factor "weighs at least slightly against transfer" for several reasons (Dkt. #39 at p. 11). To start, Plaintiff alleges that relevant source code cannot be accessed from NDCA because it is stored in Japan, and the only documents accessible from third-party SEL employees in San Diego—again, outside of NDCA—are *technical* documents of unknown relevance. Thus, it will be no more difficult to access source code in this district than in NDCA because "'the source code can be accessed only by bringing far-flung individuals into [either]district'" (Dkt. #39 at p. 11) (quoting *TikTok*, 85 F.4th at 359). Moreover, Defendant's SEL "engineering team" does not appear to be responsible for any of the Accused Product's relevant features, instead acting as a mediator between repair personnel and Defendant's development team in Japan. To the extent those technical documents are relevant, Plaintiff claims

---

[2] The Court notes that San Diego is outside of NDCA.

that an SEL employee's ability to access those documents 500 miles away from NDCA should not affect this Court's analysis.

This factor is neutral. It appears that most of the evidence relevant to this case will come from either Defendant in Japan or Mr. Solomon.[3] But "the bulk of the evidence comes from the *accused infringer*" in a patent case, not the inventor. *See Genentech*, 566 F.3d at 1345 (emphasis added) (citations omitted). Thus, the Court will weigh the location of the infringer's evidence more heavily. Given that Defendant is headquartered in Japan and that "design and development of [the Accused Products] occurs in Japan," the Court suspects that the bulk of evidence will come from there—a forum across the Pacific Ocean from both NDCA and this district. That Defendant *may* have access to relevant technical documents, but not source code, through subsidiary employees located 500 miles away does not push the needle toward transfer. A tremendous distance separates Japan from either forum; concluding that one venue is significantly more convenient than the other would necessarily entail an arbitrary drawing of geographical lines. That, the Court will not do.

Regardless of where sources of proof are located, they must either be electronic or physical. In this case, the evidence will likely consist of both because the Asserted Patents broadly teach "in-camera systems for filtering and correcting image aberrations or distortions"—a process whereby camera software and hardware interact to correct distortion (Dkt. #1 at ¶12; *see* '805 Patent, Fig. 1 (depicting a microprocessor configured to perform software-enabled corrective functions, and a physical camera lens)).

---

[3] The Court does not believe that substantial, relevant, third-party evidence will also come from Mr. Sachs for the reasons stated below regarding compulsory process. *See infra*, at 9.

Electronic evidence—most importantly, source code—is equally accessible in this district as it is in NDCA. Defendant acknowledges that "technical materials such as source code are located" in Japan but states only that "manuals and bulletins" are available in San Diego (Dkt. #26 at p. 12). Whether or not the Court transfers this case, Defendant must send "far-flung" employees into either district or make its source code electronically accessible, rendering the difference in distance negligible. *See Genentech*, 566 F.3d at 1338 ("because the documents housed in Europe and Washington, D.C. will need to be transported in any event, it is only slightly more inconvenient or costly to require the transportation of those materials to California than Texas"); *see also Lionra Techs. Ltd. v. Fortinet, Inc.*, No. 2:22-CV-322-JRG-RSP, 2023 WL 74918523, at *3 (E.D. Tex. Nov. 12, 2023) (finding no difference between "sending electronic files from [a foreign country] to Texas compared to California).

Physical evidence is stored in Austin, Texas, which is closer to this district than NDCA, albeit outside of this district. The Court is in no position to determine what proportion of relevant documents in this case will be physical as opposed to electronic. Thus, the Court finds that this factor is neutral in the overall analysis.

    **B.**    **The "availability of compulsory process to secure witness attendance" factor is neutral.**

This factor favors transfer when most of the non-party witnesses are within the subpoena power of the transferee venue. *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *4 (Fed. Cir. 2021). Courts must consider all potential witnesses who have relevant and material information, without attempting to evaluate the importance of their testimony or the likelihood that they will testify. *Genentech*, 566 F.3d at 1343.

Defendant asserts that this factor heavily favors transfer because there are third-party witnesses in NDCA and none in this district (Dkt. #26 at p. 13) (citing *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. Sept. 11, 2014)). For example, Mr. Sachs, an attorney with "involvement in supporting Mr. Solomon's patent prosecution efforts," resides in NDCA and is therefore subject to that court's subpoena power (Dkt. #26 at p. 13). According to Plaintiff, however, multiple SEL employees with damages-related information reside and may be subpoenaed in this district (Dkt. #39 at p. 13). And the extent of Mr. Sachs' true involvement in prosecuting the Asserted Patents is disputable: he did not file any documents with the USPTO on Mr. Solomon's behalf, and he withdrew as Mr. Solomon's counsel before the events Defendant alleges gives rise to its inequitable conduct claim (Dkt. #39 at pp. 14–15). Finally, Plaintiff contends that the effect of non-party witnesses in NDCA should be discounted because they have little relevant knowledge and have not been "shown that [they] would be unwilling to testify," according this factor less weight (Dkt. #39 at p. 14) (quoting *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630–31 (5th Cir. 2022)).

This factor is neutral. To start, the Court is unpersuaded by Defendant's contention that relevant third-party evidence may come from Mr. Sachs, an attorney who is, at best, tangentially related to the Asserted Patents (Dkt. #39 at pp. 14–15). As Plaintiff points out, Mr. Sachs did not file any documents with the USPTO on Mr. Solomon's behalf. Mr. Sachs also withdrew his name from USPTO records regarding the '805 Patent in September 2009—well before any alleged inequitable conduct occurred (*See* Dkt. #23 at ¶¶ 132, 144). Such an attenuated patent prosecution role cannot reasonably support an inference that Mr. Sachs has *uniquely* relevant—let alone necessary—evidence that should influence this factor's outcome, particularly when Defendant does not assert that Mr. Sachs would be unwilling to testify in this district. *TikTok*, 85 F.4th at 361

(finding no clear abuse of discretion in "holding that this factor is neutral when petitioners have failed to identify any unwilling non-party witness"); *Jorge v. Atl. Hous. Found., Inc.*, No. 2:19-cv-296-JRG, 2020 WL 13042510, at *2 (E.D. Tex. July 29, 2020) ("When a party fails to identify any witnesses for whom compulsory process will be needed, this factor is neutral.").

Separately, Defendant's argument that "there are third-party witnesses in the transferee forum and *none* in the transferor forum" takes too myopic a view on the topics for which a witness can be deemed relevant to this case (Dkt. #26 at p. 13). As mentioned above, Defendant's SEL employees have sales and marketing knowledge relevant to Plaintiff's damages claims (Dkt. #39 at pp. 13–14). *See supra*, at 9. Thus, they count as non-party witnesses in the transferor forum to be weighed against the single non-party witness identified by Defendant in the transferee forum. Because the number of such damages witnesses in this district is unascertainable at this time, however, the Court cannot conclude that they outnumber witnesses in NDCA. Thus, the Court finds that this factor is neutral.

### C. The "cost of attendance for willing witnesses" factor slightly favors transfer.

This factor compares the total time a witness would have to travel to attend trial in each proposed forum. *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. 2021) ("*Google I*"). It is "the single most important factor in transfer analysis." *Juniper Networks*, 14 F.4th at 1318 (quoting *Genentech*, 566 F.3d at 1343). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. However, the "100-mile rule" should not be applied rigidly, particularly when witnesses "will be required to travel a significant distance no matter where they testify." *Genentech*, 566 F.3d at 1344.

Defendant asserts that NDCA is indisputably more convenient than this district because the federal court in San Francisco is approximately 1,321 miles closer to Tokyo than the Sherman courthouse (Dkt. #26 at p. 14). NDCA is not only convenient for Defendant's employees because they can travel from an affiliate office in San Jose, California, but it is also more convenient for Mr. Solomon, who resides in NDCA. Thus, Defendant claims that this factor strongly favors transfer.

Plaintiff argues that Defendant cannot meet its burden as to this factor with vague, general appeals to witnesses in Japan without describing what their testimony would entail, even if only generally (Dkt. #39 at p. 15) (quoting *Welch v. Capital One Bank USA, N.A.*, 2022 U.S. Dist. LEXIS 249763, *25 (E.D. Tex. Sep. 13, 2022)) ("Vague statements about the convenience of unknown and unnamed witnesses are insufficient to convince the Court that the convenience of the witnesses would be best served transferring venue."). Plaintiff further cautions the Court against focusing exclusively on travel distance, as in Plaintiff's view, the 100-mile rule uses travel distance as a *proxy* for total travel costs (Dkt. #39 at p. 16) (quoting *Welch*, 2022 U.S. Dist. LEXIS 249763, at *25) (incorporating into the convenience analysis factors such as travel time, meal and lodging expenses, overnight stays, and absence from regular employment).

This factor favors transfer, but only slightly. Witnesses in this case fall into one of two categories: they are either Mr. Solomon, who resides in NDCA, or Defendant's employees residing in Japan. Regardless of this Court's interpretation of factors to consider in evaluating convenience (i.e., whether strictly distance or a more holistic convenience analysis), NDCA is more convenient for Mr. Solomon.[4]  As for the witnesses in Japan, however, the Court finds that, whether trial is

---

[4] Defendant also claims that this factor would favor transfer even if Mr. Solomon were willing to travel to Texas for trial (Dkt. #23 at p. 14). Because Plaintiff did not raise that argument in its briefing, the Court will not analyze the effect Mr. Solomon's willingness would have had on this factor.

held in Texas or in California, the distance traveled and accommodations required are so great as to render each venue equally as inconvenient as the other. In such a case, the 100-mile rule does not clearly favor one venue. *See Google I*, 2021 WL 4427899, at *4 (rejecting a "'rigid[]' application of the rule when 'witnesses . . . will be required to travel a significant distance no matter where they testify' and when all witnesses would be inconvenienced by having to leave home to attend trial."); *In re Apple Inc.*, 979 F.3d 1332, 1341 (Fed. Cir. 2020) (abandoning a strict application of the 100-mile rule because "regardless of the ultimately chosen venue, such witnesses will be required to travel a significant distance, will likely incur meal and lodging expenses, and will likely incur time away from home.").

Moreover, the parties' arguments regarding which costs to consider in this factor are unpersuasive because they paint different, incomplete pictures of the witnesses' total inconvenience. For each additional cost imposed by one venue onto the witnesses from Japan, there is arguably a corresponding cost they would no longer have to pay in the other venue. Accordingly, the Court has no convincing basis on which it should differentiate between one multi-day, transcontinental commitment and another. Thus, the witnesses from Japan have a neutral effect on this factor, but Mr. Solomon's residence in NDCA weighs this factor slightly in favor of transfer. Overall, this factor therefore weighs slightly in favor of transfer.

    **D.    The "all other practical problems that make trial of a case expeditious" factor weighs against transfer.**

"The fourth private interest factor addresses concerns rationally based on judicial economy." *Farmobile LLC v. Farmers Edge Inc.*, No. 2:21-cv-411, 2022 WL 2653893, at *5 (E.D. Tex. July 7, 2022). "Motions to transfer venue are to be decided based on 'the situation which

existed when the suit was instituted.'" *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)).

Defendant acknowledges that "[p]rior familiarity of the judge in the original venue with the asserted patents from an earlier litigation can sometimes disfavor transfer in the name of judicial efficiency," but claims that efficiency gains will not accrue where a different judge—here, Judge Gilstrap—heard the related case (Dkt. #26 at p. 15) (citing *Droplets, Inc. v. E*TRADE Fin. Corp.*, 2012 WL 13390146, at *2 (E.D. Tex. Mar. 8, 2012)). Even if the judge were the same, however, Defendant contends that the other factors favoring transfer would collectively outweigh any incremental efficiency gains attributable to this Court's prior familiarity (Dkt. #26 at p. 16) (quoting *Google II*, 58 F.4th at 1383) ("importantly, judicial economy considerations [can]not undermine [a] clear case for transfer"). Further, anticipated motions to transfer by defendants in related, co-pending cases would promote efficiency and avoid inconsistent rulings by avoiding litigation between two different judges in different districts. Thus, in Defendant's view, this factor favors transfer.

Plaintiff argues that this factor weighs against transfer because doing so would reduce judicial economy. The judge overseeing one of the NDCA declaratory judgment actions has already issued a tentative order transferring the case to this district (Dkt. #39-2 at p. 2) ("Tentative Order: This case is identical in terms of issues, facts, and parties to the one filed in the Eastern District of Texas . . . it is in the interest of justice and efficiency for the Eastern District of Texas to decide this case along with the other cases involving the exact same patents"). The other declaratory action is assigned to a different judge; transferring this case to NDCA, then, would lower judicial economy by splitting related cases between two judges as opposed consolidating

13

them before a single judge in this district. Plaintiff also contends that key factual differences between this case and *Droplets* warrant a distinction. In *Droplets*, the Court's previous experience was limited to the prior judges' personal interactions with the parties, whereas here, Judge Gilstrap has already construed two terms on which the Court can rely to improve judicial economy (Dkt. #33 at p. 9). *See Droplets*, 2012 WL 13390146, at *2. Defendant's reliance on *Google II* is also misguided because the opinion "only states that this factor *standing alone* cannot justify a denial of transfer in view of a 'clear case for transfer in light of the imbalance on the other factors'" (Dkt. #39 at p. 9) (*Emerging Auto. LLC v. Kia Corp.*, No. 2:23-cv-434-JRG, 2024 WL 3170398, at *12 (E.D. Tex. June 25, 2024)) (quoting *Google II*, 58 F.4th at 1383).

This factor weighs against transfer. The substantive issues presented in this case and related cases are so similar that splitting them between multiple courts, let alone multiple judges, would significantly diminish judicial economy. In fact, "[t]here of the patents asserted against [Defendant] have been asserted against all five other defendants, while all four patents asserted against [Defendant] have been asserted against four of the five other defendants" (Dkt. #39 at p. 8). Defendant claims that "the accused products in the different cases are different," but even accused products that are different, strictly speaking, can be similar enough to present the same issues when compared to the same Asserted Patents. *See In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice.").

As Defendant concedes, "[i]t would be far more efficient, and avoid inconsistent results, for all of [Plaintiff's] cases to be litigated before the same judge . . . ." (Dkt. #26 at p. 16). And if these cases are to be consolidated in a single district, the better path to promoting judicial economy

14

would be to keep them in a district with related, co-pending cases, particularly where at least one of them does not have a pending motion to transfer.[5] Further, the Court agrees with Plaintiff that Defendant's reliance on *Droplets* neglects that a claim construction order pertinent to the Asserted Patents had not already issued in the prior case (Dkt. #39 at p. 10). *Droplets,* 2012 WL 13390146, at *2 (E.D. Tex. Mar. 8, 2012) ("The case settled before the Court issued a claim construction order."). Despite the distinction, the Court will not weigh Judge Gilstrap's claim construction order on two terms heavily in its analysis, as it represents only a small fraction of the work either this Court or NDCA would necessarily undertake to adjudicate these claims. Still, the Court is unpersuaded by Defendant's arguments that transferring the case would promote judicial economy. As a result, the Court finds that this factor disfavors transfer.

## II. The Public Interest Factors

### A. "Administrative difficulties flowing from court congestion" slightly disfavors transfer

This factor considers "the administrative difficulties flowing from court congestion." *TikTok, Inc.*, 85 F.4th 352 at 363 (5th Cir. 2023) (quoting *Volkswagen II*, 545 F.3d at 315). It considers "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 Fed. App'x 929, 932 (Fed. Cir. 2020). It "normally weighs against transfer when the 'case appears to be timely proceeding to trial before the' transferee [sic] district." *Id.* Time-to-trial differences, however, should not "weigh [this factor] against transfer when the plaintiff 'is not engaged in product competition in the marketplace and is not threatened

---

[5] *See, e.g., Optimum Imag. Techs. LLC v. Panasonic Corp., et al.*, No. 4:23-cv-926-ALM (E.D. Tex. Oct. 18, 2023); *see also supra* note 1, at 1 (listing co-pending cases).

in the market in a way that, in other patent cases, might add urgency to case resolution." *In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023) ("*Google II*").

Defendant contends that this factor is neutral despite unfavorable court congestion statistics. For example, Defendant concedes that "the median time to trial in the Northern District of California is longer than in this [d]istrict," but argues that this factor should remain neutral because Plaintiff, a non-practicing entity, is not engaged in product competition (Dkt. #26 at p. 18) (quoting *Google II*, 58 F.3th at 1383) (finding this factor neutral where a non-practicing entity "is not engaged in product competition in the marketplace," and therefore "is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution and give some significance to the time-to-trial difference").

Plaintiff focuses its argument on a different cause of court congestion: duplicate proceedings in NDCA. Specifically, Plaintiff argues that this factor weighs against transfer because at least one of the duplicative declaratory judgment actions in NDCA is likely to be transferred here (*See* Dkt. #39-2). Thus, transferring this case while another remains in this district—assuming NDCA does indeed transfer the declaratory judgment action—would increase not only court congestion but also the time to trial, the risk of inconsistent rulings, and the potential for duplicative work. *See Emerging Auto.*, 2024 WL 3170398, at *13 (describing increased court congestion as an "axiomatic" result "not just for the present litigants but for the public at large").

This factor slightly disfavors transfer. While time-to-trial differences and relative docket congestion initially suggest that this factor should weigh against transfer, the Federal Circuit has counseled against drawing such a conclusion when, as here, the patentee "is not engaged in product competition" *Google II*, 58 F.4th at 1383. But the holding in *Google II* stemmed from

16

*time-to-trial differences* rather than the court congestion argument presented here. *Google II* does not broadly support the proposition that, when one party is a non-practicing entity disengaged from product competition, this factor must either be neutral or favor transfer. *See id.* Instead, *Google II* considered competitive market dynamics as a means to "give some significan[ce] to the time-to-trial difference." *Id.* Similarly, the Federal Circuit concluded in *In re Meta* that the district court erred in finding this factor weighed slightly against transfer because "[t]here [was] no record evidence for the district court's findings that [the non-practicing entity] 'is/was engaged in product competition in the marketplace' against [the appellant] . . . *giv[ing] some significance to the time to trial difference*[] between districts." *In re Meta Platforms, Inc.*, No. 2023-143, 2023 WL 7118786, at *2 (Fed. Cir. 2023) (emphasis added). This case is distinguishable from Federal Circuit precedent because Plaintiff argues that this factor slightly disfavors transfer on completely independent grounds—the "axiomatic" congestion that this Court, NDCA, and the public at large will suffer from if duplicative proceedings occur in different forums, irrespective of time-to-trial differences (Dkt. #40 at pp. 5–6). *Emerging Auto.*, 2024 WL 3170398, at *13. The Court agrees and finds that this factor slightly disfavors transfer.

    **B.**    **The "local interest in having localized interests decided at home" factor favors transfer.**

This factor contemplates the "significant connections between a particular venue and the events that gave rise to a suit." *Apple.*, 979 F.3d at 1345 (citations omitted). In evaluating which district has the greater connection to the litigation, courts should disregard interests that "could apply virtually to any judicial district or division in the United States." *Volkswagen II*, 545 F.3d at 317–18.

Defendant asserts that this factor favors transfer because Mr. Solomon, against whom Plaintiff alleges an inequitable conduct claim, and the attorneys who helped him prosecute the patents reside in NDCA (Dkt. #26 at p. 17). Plaintiff argues that this factor disfavors transfer because one attorney who helped Mr. Solomon has no connection to Defendant's inequitable conduct claims, and the other lives in New York (Dkt. #39 at p. 19). Moreover, Defendant's SEL employees in this district "work[] in sales and marketing related to the Accused Products" (Dkt. #39 at p. 18). Those employees are also based in San Diego, not in NDCA, lessening NDCA's interest in this case. Plaintiff also argues that its "business action" (i.e, filing lawsuits to enforce patent rights in this district) creates a local interest that should be weighed when evaluating this factor (Dkt. #33 at p. 15) (quoting *Digital Broad. Sols., LLC v. DISH Network L.L.C.*, No. 2:22-cv-335-JRG, 2023 WL 11805298, at *8 (E.D. Tex. Jan. 19, 2023)) ("The community where suit is filed and where the population is subject to the use and impact of the Accused Products should be considered even if a defendant does not have its own employees based there.").

This factor favors transfer. Defendant properly notes that, given Mr. Solomon's residence in NDCA, the "inventor . . . whose work may be questioned at trial" creates a local interest in NDCA (Dkt. #26 at p. 17) (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)). Plaintiff's allegation that the local interest in this forum is comparable to that of NDCA is two-fold: (1) Plaintiff is based in Austin, Texas—which, again, is not in this district—and it files suit in this district; and (2) Defendant's SEL employees with damages-related information reside in this district. Plaintiff's critical error is that neither speaks to the ***events giving rise to the suit***. *Apple*, 979 F.3d at 1345. Plaintiff's Complaint identifies the precise conduct giving rise to this suit—namely, Defendant's sale of Accused products in this district—but "[t]he Fifth Circuit has unequivocally

18

rejected the argument that citizens of the venue chosen by plaintiff have a 'substantial interest' in adjudicating a case locally because some allegedly infringing products found their way into the Texas market." *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009). Consequently, NDCA has a stronger local interest in resolving this case than this district. This factor therefore favors transfer.

### C. The remaining factors are neutral.

The remaining factors uncontested by the parties are neutral: (1) the familiarity of the forum with the governing law; and (2) the avoidance of conflict of law issues (Dkt. #26 at p. 18; Dkt. #39 at p. 19).

After reviewing each factor and accounting for its weight, the Courts finds that Defendant has not met its burden to show that NDCA is "clearly more convenient" than this district. Accordingly, the Court will **DENY** the Motion.

### CONCLUSION

It is therefore **ORDERED** that Defendant Sony Corporation's Motion to Transfer to the Northern District of California Pursuant to 28 U.S.C. 1404(a) (Dkt. #26) is hereby **DENIED**.

**IT IS SO ORDERED.**

SIGNED this 25th day of March, 2025.

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE